UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANA CAMMON,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

    Defendant.

Case No. 24-10422
Honorable Laurie J. Michelson

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [17]

In 2017, Shana Cammon, an African American woman, was fired from COBX, a subsidiary of Blue Cross Blue Shield of Michigan. Cammon claims her termination was discriminatory and retaliatory and followed a pattern of harassment. Despite being assured in 2017 that she was eligible for rehire, when Cammon was offered a new position with BCBSM in 2022, it was swiftly rescinded because she was deemed "ineligible for rehire." (ECF No. 1, PageID.6.) Cammon believes the recission was part of a continuing pattern of discrimination and retaliation. So, in February of 2024, she filed this lawsuit against BCBSM. (ECF No. 1.) In response, BCBSM moves to dismiss, arguing Cammon's claims are barred by the applicable statutes of limitations and that she fails to plausibly plead her claims. (ECF No. 17.) The motion is adequately briefed (ECF Nos. 17, 20) and does not require further argument. *See* E.D. Mich. LR 7.1(f).

For the reasons that follow, the Court GRANTS Defendant's motion to dismiss.

## I.

In the current posture of the case, the Court accepts as true the following factual allegations from Cammon's complaint.

Cammon was employed by COBX from May to September 2017. (ECF No. 1, PageID.2–3.) During that time, Cammon claims she was harassed by her supervisor because of her race.[1] (*Id.* at PageID.3.) She reported the alleged harassment to HR in August 2017 and was terminated a month later. (*Id.*) She believes this termination was retaliatory and/or racially motivated. (*Id.* at PageID.6.)

Shortly after Cammon's termination, an HR employee allegedly advised her that she was eligible for rehire. (*Id.* at PageID.4.) About a year later, in September 2018, she began applying for positions at BCBSM. (*Id.*) She applied for an analyst role but was instead offered a customer service position that paid 50% less. (*Id.* at PageID.4–5.) She initially accepted, then later declined the position. (*Id.* at PageID.5.) Over the next four years, she continued to apply and interview for different positions at BCBSM and its subsidiaries. (*Id.*) In November 2022, Cammon was offered the analyst position that she previously applied for in 2018 and accepted the job. (*Id.*) But a month later, the offer was rescinded because "there had been a determination that she was ineligible for rehire with BCBSM." (*Id.* at PageID.6.)

---

[1] While Cammon also brings claims of gender/sex discrimination, she does not allege any facts to support these claims. In fact, she claims "[w]oman employees were treated better than male employees." (ECF No. 1, PageID.8–9.) So even if these claims were not barred by the applicable statutes of limitations, Cammon does not plausibly plead them.

2

In the years since, Cammon has struggled to find employment. She is frequently offered interviews, but they never move forward. (*Id.* at PageID.6.) She believes that BCBSM is providing a bad reference for her, preventing her from employment with BCBSM, its subsidiaries, its contracting agencies, and even positions outside of BCBSM. (*Id.* at PageID.6–7.)

Accordingly, Cammon filed this suit on February 20, 2024, bringing six claims: gender/sex "harassment/discrimination" in violation of Title VII and the ELCRA, race-based discrimination in violation of Title VII and the ELCRA, and retaliation in violation of Title VII and the ELCRA. (*Id.* at PageID.7–14.)

BCBSM moved to dismiss, arguing that all of Cammon's claims are untimely. First, as to Cammon's Title VII claims, BCBSM asserts that she filed her Charge of Discrimination with the Equal Employment Opportunity Commission too late (more than 300 days after the alleged discriminatory act). (ECF No. 17, PageID.75.) Second, BCBSM argues that Cammon's ELCRA claims are barred by the ELCRA's three-year statute of limitations because she filed her complaint more than six years after her termination. (*Id.* at PageID.79–80.) Anticipating Cammon's response, BCBSM also asserts that the statutes of limitations should not be tolled. (*Id.* at PageID.77–78, 80.) It adds that Cammon's retaliation claims, even if not time-barred, should be dismissed for failure to state a claim because Cammon has not alleged facts that support her "theory that she was blackballed." (*Id.* at PageID.77, 80.)

In response, Cammon argues that the last act of discrimination occurred on December 27, 2022—when her offer for the analyst job was rescinded—and that her

3

EEOC charge was timely filed on October 23, 2023. (ECF No. 20, PageID.113.) She argues that the 2017 conduct is actionable based on the continuing violations doctrine. (*Id.* at PageID.114.)

After addressing the relevant standard, the Court turns to these arguments.

## II.

In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A 12(b)(6) motion is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations, because a plaintiff is not obligated to plead the inapplicability of an affirmative defense to state a claim. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). But sometimes the allegations in a complaint affirmatively show that a claim is time-barred, in which case dismissing the claim under 12(b)(6) is appropriate. *Id.* "In other words, a statute of limitations challenge

4

is 'susceptible to resolution on a motion to dismiss' if a plaintiff 'affirmatively pleads himself out of court.'" *Mingo v. Fed Cmty.*, 484 F. Supp. 3d 506, 510 (E.D. Mich. 2020) (quoting *Rembisz v. Lew*, 590 F. App'x. 501, 504 (6th Cir. 2014)).

### III.

Generally, the timely filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit. *Peeples v. City of Detroit*, 891 F.3d 622, 630–31 (6th Cir. 2018). If the alleged unlawful practice occurs in a "deferral state," like Michigan, which has enacted its own laws prohibiting discrimination in employment, a plaintiff must file a charge with the EEOC within 300 days of the alleged discrimination. *Alexander v. Loc. 496, Laborers' Int'l Union*, 177 F.3d 394, 407 (6th Cir. 1999); *see* Mich. Comp. Laws § 37.2202. Once the EEOC has completed an investigation and provided a plaintiff with a right to sue letter, the plaintiff has 90 days to file suit. 42 U.S.C. § 2000e-5(f)(1).

A discrimination claim under the ELCRA must be filed within three years of the date of the discriminatory action. Mich. Comp. Laws § 600.5805(10). The limitation period begins to run on the date of the alleged wrongful act, not when the damages are suffered. *Downer v. Rite Aid Corp.*, No. 10-14974, 2011 WL 3799884, at *3 (E.D. Mich. Aug. 29, 2011) (citing *E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 561 (6th Cir. 2001)). A new limitations period does not begin when a party suffers adverse consequences from a previous discriminatory act. *Id.* (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

## A. Discrimination Claims (Counts I–IV)

The complaint makes clear that Cammon's claims of discrimination on the basis of sex and race under both Title VII and the ELCRA are time-barred.

Start with Cammon's ELCRA claims. Again, the ELCRA imposes a three-year statute of limitations. Mich. Comp. Laws § 600.5805(10). Cammon brings claims of discrimination based on her employment with COBX from May to September 2017, but did not file suit until February 2024—more than six years later. Cammon argues the claims are timely based on the continuing violations doctrine. But "the continuing violations doctrine does not apply to ELCRA" claims. *Webster v. AutoZone Dev. LLC*, No. 23-13033, 2024 WL 4245402, at *4 (E.D. Mich. Sept. 19, 2024) (citing *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 658–59 (Mich. 2005)). So these claims are untimely.

Next, Cammon's Title VII claims. These claims similarly challenge conduct from May to September 2017, but Cammon did not file a charge with the EEOC until October 2023—well beyond the 300-day limit. And while the continuing violations doctrine can apply to some Title VII claims, Cammon's claims do not qualify.

Whether the continuing violations doctrine applies depends on whether the plaintiff's claim is based on discrete discriminatory acts or a hostile work environment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–21 (2002). A discrete act is a single, identifiable retaliatory or discriminatory act, such as "termination, failure to promote, denial of transfer, or refusal to hire," that itself constitutes an "unlawful employment practice" and gives rise to a Title VII claim. *Id.*

6

at 114; *see also* 42 U.S.C. § 2000e-5(e)(1). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. A plaintiff cannot combine discrete discriminatory and retaliatory acts for statute of limitations purposes, because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice," which starts a new clock for filing charges. *Id.* at 114 (internal quotation marks omitted). On the other hand, a hostile work environment claim alleges a series of separate acts, or repeated conduct, that on their own may not be actionable, but collectively constitute one unlawful employment practice. *Id.* at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). Hostile work environment claims require the plaintiff to demonstrate that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 116 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In sum, the continuing violations doctrine allows courts to toll limitations periods for alleged discriminatory conduct deemed continuing in nature, i.e., for hostile work environment claims, but is inapplicable in cases of discrete acts because those are "easy to identify" as occurring on a specific date and independently actionable. *Morgan*, 536 U.S. at 114; *see id.* at 118–19; *Downer*, 2011 WL 3799884, at *4. As alleged, BCBSM's recission of Cammon's job offer was a single, identifiable adverse employment decision that took place on December 27, 2022 (ECF No. 1,

7

PageID.6). It is most appropriately categorized as a discrete act of discrimination because refusal to hire is a recognized discrete act. *Morgan*, 536 U.S. at 114; *see Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (upholding district court finding that "denial of training and promotion opportunities" were discrete acts). Accordingly, the continuing violations doctrine is inapplicable here.

So too is equitable tolling. Typically, equitable tolling applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). The Sixth Circuit has identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Id.* at 561 (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). BCBSM is correct that Cammon has made no allegation that she was unaware of the Title VII 300-day filing requirement. (ECF No. 17, PageID.78.) Nor does Cammon claim a substantive restriction on her ability to bring an ELCRA claim in a timely manner. (*Id.* at PageID.80.) Instead, Cammon maintains this is "irrelevant because [her] claims are not time-barred." (ECF No. 20, PageID.120.) In other words, she makes no attempt to satisfy the factors that give rise to equitable tolling and nothing in the complaint

8

suggests that she lacked notice or knowledge of the filing requirements. Thus, equitable tolling is not available.

In sum, to pursue her ELCRA claims, Cammon was required to file her suit within three years of her termination from COBX, i.e., by September 2020, which she did not. Thus, Counts II and IV are time-barred. Likewise, to pursue her Title VII claims, she was required to file her EEOC charges within 300 days after her termination from COBX in September 2017—which, again, she did not. She filed her charge in October 2023, more than five years after the EEOC filing deadline. And she has not presented any compelling argument for equitable tolling. Thus, Counts I and III are also time-barred.

Accordingly, the motion is GRANTED with regard to Counts I–IV.

### B. Retaliation Claims (Counts V and VI)

That leaves Cammon's retaliation claims under Title VII and ELCRA. As an initial matter, these claims are timely. They primarily relate to the recission of Cammon's job offer in December 2022. Cammon filed her EEOC charge on October 23, 2023, i.e., within the 300-day statutory window, and filed this lawsuit on February 20, 2024, i.e., within 90 days of receiving her right-to-sue letter from the EEOC (ECF No. 17-3); *see* 42 U.S.C. § 2000e-5(f)(1), and within three years of the allegedly retaliatory recission, *see* Mich. Comp. Laws § 600.5805(10). But even though timely, Cammon has failed to plausibly allege a claim for retaliation.

Title VII prohibits an employer from retaliating against an employee (or former employee) who has either (1) opposed an unlawful employment practice or (2) made

9

a charge or participated in an investigation regarding unlawful employment practices. 42 U.S.C. § 2000e-3(a); *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). The ELCRA similarly prohibits retaliation. *See* Mich. Comp. Laws § 37.2701 (prohibiting "[r]etaliat[ion] or discriminat[ion] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act").

To satisfy the pleading requirements of Title VII's anti-retaliation provision, the plaintiff must plausibly allege that: (1) she engaged in activity protected by Title VII; (2) the defendant knew of her protected activity; (3) thereafter the defendant took adverse action against her; and (4) a causal connection existed between the protected activity and the materially adverse action. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015). The ELCRA uses this same prima facie standard, but requires only that the action be "adverse," not "materially adverse." *Northover v. Banfield*, No. 365700, 2025 WL 1490932, at *4 (Mich. Ct. App. May 23, 2025); *see also Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021). Because the analysis of retaliation claims under the ELCRA closely mirrors the Title VII analysis, the Court will address these claims together and cite Title VII and ELCRA case law interchangeably.

As to the first element, Cammon alleges that she is being retaliated against for reporting discrimination to COBX's HR department in August 2017. (ECF No. 1, Page.ID.12–15.) "The opposition clause of Title VII protects not only the filing of

10

formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *New Breed Logistics*, 783 F.3d at 1067. "[C]omplaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation." *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012), *reprinted as amended*, No. 11-1148, 2012 U.S. App. LEXIS 21763 (6th Cir. Oct. 17, 2012). Thus, Cammon's act of reporting the alleged discrimination to HR is protected by Title VII, and the first element is satisfied.

The second element is not satisfied, however, because Cammon has not plausibly alleged that BCBSM knew of the protected activity. The protected activity Cammon engaged in occurred during her employment at COBX. And while Cammon has identified that COBX is a subsidiary of BCBSM, that fact alone is not sufficient to show that BCBSM knew of the protected activity. Indeed, it is a general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries because they are separate legal entities. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Likewise, "Michigan law presumes that parent and subsidiary corporations constitute separate legal entities." *Hills & Dales Gen. Hosp. v. Pantig*, 812 N.W.2d 793, 797 (Mich. Ct. App. 2011) (citing *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995)). "The separate artificial corporate personalities are usually disregarded only when the corporate device is used to defraud creditors, create a monopoly, circumvent a statute or for other similar reasons." *Boggs v. Blue Diamond Coal Co.*,

11

590 F.2d 655, 662 (6th Cir. 1979). Cammon has not asserted that BCBSM controls the daily business affairs of COBX or that COBX exists only as an "alter ego" or "mere instrumentality" of BCBSM. *See Hills & Dales Gen. Hosp.*, 812 N.W.2d at 797. Nor has Cammon alleged any fraudulent or suspect activity that would lead the Court to disregard the separation between the legal entities. *See Boggs*, 590 F.2d at 662. Thus, Cammon has presented no legal or factual basis for disregarding BCBSM's separate legal form and imputing knowledge of the report Cammon made to COBX.[2]

While no longer necessary, the Court will briefly analyze the final two elements. The third element, whether the defendant took a materially adverse action against the plaintiff, is satisfied. For purposes of retaliation, a materially adverse action is one which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (quoting *Burlington N.*, 548 U.S. at 68). This burden is "less onerous in the retaliation context than in the anti-discrimination context." *Azuh v. Providence-Providence Park Hosp.*, 380 F. Supp. 3d 665, 676 (E.D. Mich. 2019) (quoting *Laster*, 746 F.3d at 731). BCBS's recission of Cammon's job offer meets this standard. *See Patterson v. Pinnacle Aerospace, Inc.*, No. 20-13204, 2021 WL 807873,

---

[2] Cammon moved to amend her complaint to add COBX as a defendant (ECF No. 18), but the motion was denied without prejudice for failure to comply with court rules (Text-Only Order, Jan. 10, 2025). And Cammon never refiled her motion. If COBX were named as a defendant, Cammon could of course plausibly plead that COBX knew of the protected activity because her report of workplace discrimination was made directly to COBX's HR Department. That would satisfy the second element as to COBX (which is to say nothing about the other elements of Cammon's claim). But BCBSM is the only defendant.

12

at *5 (E.D. Mich. Mar. 3, 2021) (finding that rescinding a job offer was an adverse action); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

The fourth element is not satisfied because Cammon has failed to plausibly allege a causal connection between the protected activity and the alleged retaliation. This final element requires proof of so-called "but-for" causation, i.e., that the unlawful retaliation would not have occurred but for the employee's protected conduct. *Azuh*, 380 F. Supp. 3d at 675. To demonstrate a causal connection, the plaintiff must plead factual allegations "from which an inference can be drawn that the defendant took the adverse employment action because the plaintiff engaged in protected activity." *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022) (citation modified) (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)). But, again, Cammon has not alleged that BCBSM was aware that she reported discrimination to COBX, nor that the previous report is what prompted BCBSM to rescind her reemployment offer.

Further, the five-year gap between Cammon's report of discrimination to COBX's HR Department and BCBSM rescinding her reemployment offer is far too long to establish causality. Typically, causation is "satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (quoting

13

*Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)). "But where some time elapses" between those two occurrences, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 650 (6th Cir. 2015) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Cammon has not done so. Meanwhile, it is undisputed that in September 2018, a year after she reported the alleged discrimination, BCBSM showed interest in re-hiring Cammon—she was offered a different job with BCBSM, which she initially accepted and later turned down.[3] So Cammon fails to establish a causal connection between the protected activity and alleged retaliation.

Because Cammon has not met the pleading requirements for retaliation under Title VII and the ELCRA, the Court will grant the motion and dismiss Counts V and VI. Because the claims are not time-barred, however, and recognizing that some of the deficiencies with Cammon's claims for retaliation could be cured by amendment, the Court will grant leave to amend Counts V and VI.

### IV.

For the foregoing reasons, the Court GRANTS Blue Cross Blue Shield of Michigan's motion to dismiss (ECF No. 17) in its entirety. The Court also GRANTS

---

[3] The plausibility of Cammon's conclusory allegation that she was "blackballed" by BCBSM for reporting discriminatory practices is significantly undermined by her statement that BCBSM offered her a new position in September 2018, just one year after she reported the alleged unlawful employment practices to COBX's HR department.

Cammon leave to amend her complaint as to her retaliation claims (Counts V and VI) only. She shall have two weeks from the date of this order to file this amended complaint; otherwise, her case will be fully dismissed.

SO ORDERED.

Dated: August 1, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE