UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANA CAMMON,

     Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

     Defendant.

Case No. 24-10422
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS AMENDED COMPLAINT [27]**

---

In 2017, Shana Cammon, an African American woman, was fired from COBX, a subsidiary of Blue Cross Blue Shield of Michigan (BCBSM). (ECF No. 24, PageID.143.) Despite being assured in 2017 that she would be eligible for rehire, when Cammon accepted a new position with BCBSM in 2022, it was ultimately rescinded because she was deemed "ineligible for rehire." (*Id.* at PageID.146.) In February 2024, Cammon filed this lawsuit against BCBSM alleging that the recission of the job offer was part of a continuing pattern of discrimination and retaliation. (ECF No. 1.) BCBSM filed a motion to dismiss. (ECF No. 17.) The Court granted that motion, finding Cammon's discrimination claims untimely and concluding that she failed to state a plausible retaliation claim as to the parent company (BCBSM) for the actions of its subsidiary (COBX). (ECF No. 23.) With the Court's permission, Cammon then amended her complaint, reasserting only retaliation claims against BCBSM. (ECF No. 24.) Once again, BCBSM has moved to dismiss (ECF No. 27.) The motion

is fully and adequately briefed (ECF Nos. 17, 20) and does not require further argument. *See* E.D. Mich. LR 7.1(f)(2).

Because Cammon plausibly alleges retaliation by BCBSM, the Court will DENY the motion to dismiss.

## I. Factual Allegations

In deciding a motion to dismiss,[1] the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Cammon was employed by COBX from May to September 2017. (ECF No. 24, PageID.142.) During that time, Cammon claims she was harassed by her supervisor, Beth McCandles, because of her race. (*Id.* at PageID.143.) She reported the alleged harassment to COBX's HR department in August 2017 and was terminated a month

---

[1] "[W]hen a pleading is amended, the amended pleading supersedes the original pleading." *Borns v. Nagy*, No. 17-13694, 2022 WL 987181, at *2 (E.D. Mich. Mar. 31, 2022).

later.[2] (*Id.*) Shortly after Cammon's termination, she alleges that an HR employee advised her that she was eligible for rehire. (*Id.* at PageID.144.) So about a year later, in September 2018, she began applying for positions at BCBSM. (*Id.*) She applied for an analyst role but was instead offered a customer service position that paid 50% less. (*Id.* at PageID.145.) Cammon initially accepted, then later declined the position. (*Id.*) Over the next four years, she continued to apply and interview for different positions at BCBSM and its subsidiaries. (*Id.*) In November 2022, Cammon was offered the analyst position that she had previously applied for in 2018, and she accepted the job. (*Id.*) But a month later, the offer was rescinded because "there had been a determination that she was ineligible for rehire with BCBSM." (*Id.* at PageID.146.) Cammon asserts that BCBSM had access to her COBX HR report from 2017 and considered it when extending and then rescinding this job offer in 2022. (*Id.* at PageID.147.) She also claims that COBX's HR personnel communicated with BCBSM HR "during and after [her] 2017 termination" and applied the "ineligible for rehire" designation due to Cammon's protected complaint. (*Id.* at PageID.148.) All in all, Cammon believes "the recission of her job offer would not have occurred but for her protected activity in 2017." (*Id.*)

In the years since, Cammon alleges she has struggled to find employment. She is frequently offered interviews, she says, but they never move forward. (*Id.* at PageID.146.) She believes that BCBSM is providing a bad reference for her,

---

[2] Per the Court's previous order granting BCBSM's motion to dismiss on statute of limitations grounds, this firing is not the adverse action alleged in the present amended complaint. (ECF No. 23.)

preventing her from employment with BCBSM, its subsidiaries, its contracting agencies, and even positions outside of BCBSM. (*Id.*) As of August 2025, she has still not been able to obtain gainful employment. (*Id.* at PageID.149.)

Accordingly, Cammon filed this suit on February 20, 2024, alleging unlawful discrimination and retaliation in violation of Title VII and the Elliott-Larsen Civil Rights Act (ELCRA). (ECF No. 1, PageID.7–14.) BCBSM moved to dismiss the initial complaint on December 30, 2024. (ECF No. 17.) The Court granted that motion on August 1, 2025, finding the discrimination claims were untimely and the retaliation claims were inadequately pled, while also providing Cammon leave to amend her complaint. (ECF No. 23.) Cammon did so on August 15, 2025. (ECF No. 24.)

In her amended complaint, Cammon brings retaliation claims under Title VII and ELCRA against BCBSM for rescinding her job offer for the analyst position in 2022. (ECF No. 24.) Once again, BCBSM filed a motion to dismiss, arguing that the amended complaint fails to state a plausible retaliation claim. (ECF No. 27.)

## II.

### A.

Title VII prohibits an employer from retaliating against an employee (or former employee) who has either (1) opposed an unlawful employment practice or (2) made a charge or participated in an investigation regarding unlawful employment practices. 42 U.S.C. § 2000e-3(a); *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 346

4

(1997). ELCRA similarly prohibits retaliation.[3] *See* Mich. Comp. Laws § 37.2701 (prohibiting "[r]etaliat[ion] or discriminat[ion] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act").

A retaliation claim under Title VII consists of four elements: (1) plaintiff engaged in a protected activity under Title VII; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the adverse action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). However, the amended complaint "does not need to establish a prima facie case of retaliation or contain 'detailed factual allegations' in order to survive a motion to dismiss." *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *8 (6th Cir. Jan. 26, 2022) (internal citation omitted). For a retaliation claim, Cammon need only plausibly allege that the revocation of her 2022 job offer was "in response" to her 2017 HR complaints to COBX. *See id.*

### B.

Cammon alleges that her analyst job offer was rescinded in 2022 as retaliation for reporting discrimination to COBX's HR department in August 2017. (ECF No. 24, PageID.148.) The parties do not dispute that Cammon adequately alleged she

---

[3] Because the analysis of retaliation claims under the ELCRA closely mirrors the Title VII analysis, the Court will address these claims together and cite Title VII and ELCRA case law interchangeably. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019).

opposed an unlawful employment practice in filing her HR report to COBX in 2017, and that this constitutes protected activity. (*See* ECF No. 23, PageID.135–136 ("The opposition clause of Title VII protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." (citing *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)).) Nor do they dispute that the revocation of a job offer counts as a materially adverse action for a retaliation claim. *See Patterson v. Pinnacle Aerospace, Inc.*, No. 20-13204, 2021 WL 807873, at *5 (E.D. Mich. Mar. 3, 2021) (finding that rescinding a job offer was an adverse action); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

But BCBSM disputes whether it is even the correct "employer" to sue here and contests whether Cammon adequately alleged causation.

## C.

Start with the employer issue.

BCBSM's first argument is that "Title VII and the ELCRA prohibit retaliation by an 'employer'" and that Cammon "admits COBX not BCBSM, employed her." (ECF No. 27, PageID.187.) Thus, most of its motion focuses on when it is appropriate to deem parents and subsidiaries as "joint employers." True, the legal duties of Title VII and ELCRA apply only to employers. *See* 42 U.S.C.A. § 2000e ("The term 'employer'

means a person engaged in an industry affecting commerce who has fifteen or more employees."); Mich. Comp. Laws § 37.2201(a) ("'Employer' means a person that has 1 or more employees, and includes an agent of that person.")

But for a claim of retaliatory job offer recission, liability under ELCRA and Title VII extends to prospective employers. *Patterson v. Pinnacle Aerospace, Inc.*, No. 20-13204, 2021 WL 807873, at *2 (E.D. Mich. Mar. 3, 2021) (denying motion to dismiss and explaining that a prospective employee can sue under ELCRA for retaliatory job-rescission claim). So a prospective employee like Cammon can state a claim for Title VII and ELCRA retaliation against a prospective employer like BCBSM for rescinding a job offer. *See, e.g.*, *Cadoura v. City of Detroit*, No. 20-12986, 2021 WL 5238796, at *3 (E.D. Mich. Sept. 29, 2021) (denying motion to dismiss on ELCRA and Title VII retaliation claims because prospective employee adequately plead that prospective employer rescinded job offer in retaliation for protected activity); *Friso v. Dyncorp Int'l, LLC*, No. 13-1351, 2015 WL 1311473, at *4 (E.D. Wis. Mar. 24, 2015) ("Such rescission of a job offer and inferred refusal to offer any further job offers can be considered materially adverse actions for purposes of Title VII retaliation."); *Simmons v. Mobile Cnty. Bd. of Sch. Commissioners*, No. 22-00386, 2023 WL 8719449, at *5 (S.D. Ala. Dec. 18, 2023) ("An 'adverse employment action' [for a Title VII retaliation claim] is an ultimate employment decision that includes the failure to hire and recission of an employment offer."). Contrary to BCBSM's assertion, there is no need for "veil-piercing" or "*respondeat superior*" liability (*see*

7

ECF No. 27, PageID.187) because it was BCBSM that allegedly revoked Cammon's job offer in 2022, not the subsidiary (*see* ECF No. 24, PageID.145–146).

BCBSM contests that Cammon adequately alleged that BCBSM revoked her 2022 job offer because of her 2017 HR report to COBX (ECF No. 27, PageID.188), but this argument also falls short. Its first point is that, since COBX is a separate entity with its own management team, BCBSM did not have access to COBX's personnel files and thus could not have considered Cammon's protected activity in deciding to rescind the job offer. (*Id.* at PageID.188–189.) Discovery may very well bare that out. But Cammon says just the opposite. She alleges—albeit without identifying a specific BCBSM individual—that BCBSM personnel *did* have access to her HR report and *did* consider it when revoking her offer in 2022. (ECF No. 24, PageID.147 ("Plaintiff believes that in 2022, when BCBSM extended her an offer for the Grievance and Appeal Analyst position, the offer was rescinded only after BCBSM HR reviewed her centralized personnel record, which contained her prior complaint of race discrimination.").) In support, she claims that:

> BCBSM maintained and accessed COBX's personnel records when making hiring decisions;

> COBX HR personnel, including Alicia Shivers, communicated with BCBSM HR during and after Plaintiff's 2017 termination; and

> BCBSM applied an "ineligible for rehire" designation that was based on events following her protected complaint.

(*Id.* at PageID.148.) So while BCBSM is free to disagree, at this stage, the Court must accept Cammon's allegations as true. And accepting those allegations as true, the Court finds they plausibly support that BCBSM was aware of Cammon's HR

complaint.[4]  *See United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir.) ("At the pleading stage, we accept well-pleaded factual allegations (as well as reasonable inferences from those allegations) in the complaint as true, and we ask whether those allegations make the claims plausible.").

BCBSM's second point on causation is that the five-year gap between Cammon's complaint in 2017 and the alleged adverse action in 2022 is far too attenuated to support causation. (ECF No. 27, PageID.189); *see Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) ("One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment actio[n] and the protected activity."). Cammon concedes that BCBSM has known about the HR complaint since 2018, when BCBSM offered her a position. (ECF No. 24, PageID.147.) True—a 5-year delay between the protected activity becoming known to the employer and the adverse action occurring does not infer a causal connection. *See Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) (finding that a 75-day delay is not "a convincing case for proving causation"). Nevertheless "temporal proximity is one consideration*," id.*, and Cammon can still

---

[4] Cammon did not identify which BCBSM decisionmaker allegedly reviewed her HR complaint in choosing to revoke her job offer. Nor did BCBSM raise this argument. So the Court need not address it further but notes that to establish a prima facie claim of retaliation at the summary judgment stage, there must be a basis that "the individual responsible for rescinding her offer . . . [k]new of [the] prior protected activity." *Downing v. Lee*, No. 16-1511, 2017 WL 3082664, at *7 (E.D. Va. July 18, 2017), *aff'd sub nom. Downing v. Matal*, 724 F. App'x 226 (4th Cir. 2018); *Simmons*, 2023 WL 8719449, at *5 ("it is the plaintiff's burden in alleging retaliation to set forth significant probative evidence regarding the identity, authority, and knowledge of the employer's agent who is allegedly responsible for the adverse employment action.").

plead that the HR complaint, though known since 2018, is what caused BCBSM to rescind her job offer in 2022. And while BCBSM claims that too much time passed for the rescission to be related to the complaint, this may overlook how Cammon alleges these events took place. Cammon says the time between HR *revisiting* her HR complaint and rescinding her offer is close, and thus relevant to establishing causation.

Lastly, BCBSM contends that Cammon has not plausibly alleged causation. It argues that an intervening event—BCBSM's job offer to Cammon in 2018 that she accepted and then turned down (ECF No. 24, PageID.145)—"undermine[s] any inference of retaliation." (ECF No. 27, PageID.189.) In other words, since BCBSM had access to Cammon's HR complaint back in 2018 and still offered her a position (and, apparently, continued to interview her), then it is not plausible that the same HR complaint caused it to rescind Cammon's employment offer in 2022.

Yet, there is no saying whether BCBSM would have revoked the 2018 job offer just as it did the 2022 offer had Cammon not turned it down herself. And, as Cammon points out, BCBSM has not addressed why she was listed as "ineligible for hire" yet offered positions two times. (ECF No. 24, PageID.146.) So again, while discovery may reveal the facts as BCBSM now argues them, at the pleading stage, Cammon has met the low bar of plausibly pleading causation. *See Newell v. Acadiana Plan. Comm'n Inc.*, 637 F. Supp. 3d 419, 434 (W.D. La. 2022) ("At the pleading stage, the causation standard is less stringent than the strict 'but-for' causation standard. A plaintiff need not show that the protected activity was the sole cause for retaliation, only that the

two are 'are not completely unrelated.'"); *Meilus v. Rest. Opportunities Ctr. United, Inc.*, No. 21-02554, 2021 WL 4868557, at *7 (S.D.N.Y. Oct. 15, 2021) ("Binding decisions have held on numerous occasions that in order to adequately plead causation in a retaliation claim under Title VII, a plaintiff's minimal burden is to plausibly allege but-for causation.").

## III.

Thus, for the foregoing reasons, the Court DENIES Blue Cross Blue Shield of Michigan's motion to dismiss (ECF No. 27.)

SO ORDERED.

Dated: May 18, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE